FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 1 9 2025

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

TERESA MOKA

PLAINTIFF

VS.                    CASE NO.: **4:25-cv-840-DPM**

PULASKI COUNTY SPECIAL SCHOOL DISTRICT;            DEFENDANTS
CHARLES McNULTY, INDIVIDUALLY and as   This case assigned to District Judge Marshall
SUPERINTENDENT                         and to Magistrate Judge Moore

## PETITION

COMES NOW Teresa Moka, hereinafter referred to as "Moka," by and through her attorney, Jay

Paul Coleman of the Law Offices of J. Paul Coleman. Within her petition, Moka states the

following:

## PARTIES

1. Moka is a resident of Pulaski County, Little Rock, Arkansas (AR).

2. The Pulaski County Special School District, hereinafter referred to as, "District," is a

   corporate school district with its principal place of business being at: 925 East Dixon Rd.,

   Pulaski County, Little Rock, AR. 72206.

3. Charles McNulty, hereinafter referred to as "McNulty," was a resident of the State of

   Arkansas at the time that the events that lead to this cause of action took place; he was the

   superintendent of District. McNulty's business address was: 925 East Dixon Rd., Pulaski

   County, Little Rock, AR. 72206.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 42 U.S.C. 2000(e)/Arkansas Code

   Annotated (A.C.A.) 16-123-107, which states that an individual who is injured by

employment discrimination in violation of A.C.A. 16-123-107(a)(1) has jurisdiction to bring forth a claim of discrimination in a court of competent jurisdiction.

5. Furthermore, this Court has jurisdiction pursuant to 42 U.S.C. 1983, which gives citizens within this District the right to bring forth a cause of action alleging a deprivation of rights, privileges, or immunities secured by the Constitution and its laws against another.

6. District's principal place of business is in Arkansas; this Court has personal jurisdiction over District.

7. McNulty was domiciled in Arkansas when the events that brought rise to this matter took place; this Court has personal jurisdiction over McNulty as he has the minimum contacts necessary to give the Court personal jurisdiction over him.

8. Venue is proper because the facts that give rise to this cause of action took place in Pulaski County, Little Rock, Arkansas.

## **FACTUAL ALLEGATIONS**

9. Moka was hired as principal of Mills High School, which is a part of District, on or around July 1, 2023.

10. Moka was hired to be principal during the 2023-2024 school year.

11. Moka received notice of her termination on January 26, 2024.

12. At that time, Moka was told that she had a right to go before the Pulaski County Special School Board, hereinafter referred to as "Board," for a hearing on whether or not there was reasonable cause to terminate her.

13. Within Moka's notice of termination were approximately 31 allegations attempting to justify why Moka should be terminated. *See Exhibit 1.*

14. Every allegation under numbers one through five within the Notice of Termination (*Exhibit* 1) made against Moka was false.

15. There was no documentation provided or presented to show what the protocol was for avoiding any of the alleged infractions Moka allegedly made.

16. For example, Moka was told by District that too many students were seen wearing blankets.

17. Moka reached out to high-school principals throughout District to inquire on what they do concerning the students wearing blankets; the principals told Moka that all they can do is take them, which Moka also did.

18. No principal in District has gone before Board for termination for blankets except for Moka.

19. It is ludicrous for Moka to be terminated for infractions never committed, and for infractions that Moka was never trained on how to avoid.

20. When an employee is disciplined for committing an infraction, there is generally a disciplinary document added to the employees file; there were no written disciplinaries, nor any other documentation to show that there was an issue with Moka's performance as the principal at Mills.

21. Moka had no way of knowing that there were concerns with her performance as principal.

22. Moka was not given an opportunity to correct the alleged troubling behavior.

23. Moka was not fired for any of the reasons listed in the letter in Exhibit 1 except for the contract Moka entered into with ICLE Model Schools, hereinafter referred to as "ICLE" in the fall of 2023.

24. Moka met with ICLE Model Schools during her search for a company that could teach the math teachers at her school how to teach math.

25. A weakness at Mills was its math department; as such, Moka sought a company that could assist Mills by strengthening the mathematical skills of its students.

26. Moka had several conversations with Dr. McNulty about ICLE before ICLE was contracted and after.

27. McNulty met with ICLE concerning its services, and what it could offer District.

28. McNulty was sent pictures by Moka via text message showing ICLE working with Mills' staff and students after the contract began.

29. To Moka, ICLE was not performing in the way in which it promised in the agreement between ICLE and District, so Moka terminated the agreement in January 2024.

30. Moka was terminated about one week after she terminated the contract with ICLE on behalf of District; Moka terminated the contract based off of her own observations of ICLE's shortcomings.

31. Though the contract was already terminated, District/McNulty recommended Moka's termination based off of the contract, stating that neither party knew of the contract between Moka and ICLE.

32. District and McNulty knew Moka entered in a contract with ICLE well before January 2024.

33. District and McNulty knew the cost of ICLE's services when Moka entered in the contract with ICLE, as that information was included on Moka's Title I budget, which was reviewed by District and approved.

34. District and McNulty both claim that they did not know about the contract Moka entered into on behalf of the District with ICLE, nor did they know that the contact was $300,000 over a three-year period, but both claims are false.

35. Moka's termination hearing was initially to be held on February 13, 2024; however, neither Freedom of Information Act (FOIA) request made by Moka or her Counsel was satisfied, so the termination hearing was scheduled for March 12, 2024.

36. During Board's February 13, 2024 meeting, Board mentioned having hired a new principal for Mills, and stated that the new principal was doing great; Board expressed pleasure for the new principal without completing the termination for Moka as though its mind was already made up without hearing the facts Moka prepared to present.

37. The FOIA request was fully satisfied on or around March 11, 2024, and the termination hearing was held on March 12, 2024.

38. At the hearing, it was determined by Board that there was reason to terminate Moka, and she was, in turn, terminated.

39. There was no proof introduced that Moka displayed conduct that was unbecoming of a professional employee.

40. There was no proof introduced that Moka was insubordinate, failed to follow reasonable directives, nor any other reasonable cause for termination.

41. There was a list of approximately 31 infractions given to Moka, but no proof of the infractions, no disciplinaries showing that the infractions were brought to Moka's attention at any point before she was recommended for termination, nor any directives on correcting the alleged infractions.

42. Board did not even differentiate which of the 31 infractions Moka was terminated for-
she was simply terminated; furthermore, no order was given explaining the termination.

43. Moka created a Night School Program at Mills that would give seniors the opportunity to
make up missing academic credits so they may graduate timely.

44. Moka addressed District on several occasions asking for additional security to keep Mills'
students safe.

45. Moka created a system at Mills to limit the number of children outside of the classrooms
without permission; Moka further created a system to ensure students were brought to
school by the buses on time.

46. Moka educated her instructors on how to adequately take notes, which would help Mills'
students not only understand the learning material better. but it would also aid in
improving Mills' student's studying skills.

47. Moka's hard work and dedication while at Mills exemplifies one who was interested in
and fully invested in the future of Mills' students.

48. Moka was doing her job in the position as principal.

49. Moka believes she was recommended for termination based on her sex.

50. As stated. Moka was not trained on how to correct any of the issues she inherited from
the last principal.

51. Mills' previous principal was principal for eight years; Moka was expected to repair all
imperfections in a couple of months without being told what all of the imperfections were
or how to rectify them.

52. Moka was terminated allegedly for issues that all her male counterparts face in their
schools.

53. Recently, Dr. Jay Pickering, previous principal at Joe T. Robinson High School, a male, was demoted to assistant principal when a student brought a gun to school; Moka, a woman, was not demoted- she was terminated.

54. District and McNulty have defamed Moka by claiming she did not do her job and was insubordinate.

55. Furthermore, District's and McNulty's acts of terminating Moka are actions that are willfully and intentionally damaging Moka's career.

## CAUSES OF ACTION

### Title VII, Civil Rights Act of 1964

56. Moka re-alleges and incorporates the foregoing paragraphs as if set forth word for word.

57. The Civil Rights Act of 1964 prohibits discrimination in the workplace based on sex.

58. Moka was the only female high school principal within District.

59. District and McNulty discriminated against Moka by terminating her for actions taking place in her school that are also taking place in the schools ran by her male counterparts.

60. As stated, Moka spoke to several high school principals throughout the district to see whether they had issues with children concerning a plethora of matters, including wearing blankets, and asked what they do about the issue(s).

61. All of the principals Moka spoke to claim to have issues with students wearing blankets; however, Moka is the only principal in the district that was fired for it.

62. In particular, Moka had a series of conversations with Dr. Nick Farr, principal of Maumelle High School. Dr. Nick Farr, hereinafter referred to as "Farr," struggled with students bringing blankets to school.

63. Farr stated that he just took the blankets from students; there was no discipline inflicted on Farr by the District.

64. Moka was also taking the blankets from students as she saw them; however, she was fired, and one of the reasons for her firing was allegedly because of the students wearing blankets.

65. During the 2023-2024 school year, Dr. Jay Pickering, the principal at Joe T. Robinson High School was demoted as principal and appointed assistant principal for next school year after a student brought a gun to the school.

66. None of the allegations made against Moka in Exhibit 1 rose to the heinous nature of a student bringing a gun to school; however, Moka was not given the option to be demoted; she was terminated, which caused her emotional and economic damage.

67. Moka contends that if she was not a woman, she would not have been terminated; at the most, she would have been demoted.

68. Mr. Tracy Allen, hereinafter referred to as "Allen," is the principal at Sylvan Hills High School.

69. Allen reached out to a community group to initiate securing a loan for Sylvan Hills' football field; Sylvan Hills wanted to repair/replace the field.

70. The community group was not able to complete payment on the football field, so District completed the payment on the field.

71. Allen did not ask for permission from District before beginning the process of repairing/replacing Sylvan Hills' field.

72. District did not fire, demote, nor discipline Allen for, in essence, spending District's money without permission.

73. Moka, however, entered an agreement District allowed her to enter into (the agreement with ICLE), and was terminated.

### 42 U.S.C. § 1983 and the Arkansas Civil Rights Act

74. Moka re-alleges an incorporates the foregoing paragraphs as if set forth word for word.

75. McNulty is considered a state actor pursuant to 42 U.S.C. § 1983.

76. McNulty and District collectively infringed on Moka's property interest as it relates to her employment by terminating her without a reasonable explanation for doing so.

77. While there was a termination hearing, McNulty and District collectively listed over 30 reasons to terminate Moka, but produced no true explanation or support for any of them.

78. It was never made clear for what reason out of the approximately 30 allegations Moka was fired for.

79. Moka was doing her job as principal, particularly of principal of a school that had a plethora of issues to which Moka was addressing; there was no reason to terminate Moka.

80. Because McNulty and District infringed on Moka's property interest when terminating her, Moka was severely damaged; Moka's termination caused economic hardship as being principal was her source of income.

### Defamation

81. Moka re-alleges and incorporates the foregoing paragraphs as if set forth word for word.

82. In or around January 2024, District and McNulty made slanderous statements about Moka, namely stating that she was not measuring to the expectations set for her when she became principal at Mills; essentially, McNulty and District stated that she was not doing well in the role.

83. Such statement was defamatory because it was not true; McNulty nor District did anything to determine whether the statement was true or false; the statement is the proximate cause of Moka's damages.

84. This statement is the proximate cause for Moka losing her job- her source of income; furthermore, this statement and the subsequent acts that followed the statement have the propensity to prevent Moka from getting another job as principal in Arkansas, which will have a permanent, negative effect on her career.

85. Moka struggled for over a year to attain employment comparable to her position as Principal at Mills, and still has not attained comparable employment; her struggle is attributed to the defamatory statements made about Moka's job performance within their termination letter, which is within her employment file for all potential employers to request and examine.

86. It is arguable that no employer would hire Moka for a position comparable to her position as principal at Mills High School having been fired for over 30 infractions- even if the alleged infractions are unsupported as the ones within this matter are.

87. The statements were malicious; these untrue statements have the propensity to inhibit Moka from finding work comparable to the position she held as principal. The purpose of the statements was to remove Moka from the position due to the District not wanting to pay the ICLE aid she hired with their permission.

88. District cited issues that every high school within District was experiencing and fired Moka for those reasons without providing to support her termination.

<u>Negligence</u>

89. Moka re-alleges and incorporates the foregoing paragraphs as if set forth word for word.

90. McNulty and District had a duty to ensure that Moka was adequately trained to do her job; furthermore, there was a duty owed to Moka to check in with Moka to ensure that she was comfortable with and aware of the expectations placed on her because she is a principal.

91. McNulty and District breached its duty by not supporting Moka in her role as principal, by not expressing completely what was expected of her in the role, by not giving her the assistance a new principal would need when going to a new school, and by terminating Moka without reason.

92. McNulty/District terminating Moka wrongfully is the cause in fact of her injury. But-for Moka being terminated without reason, she would still be employed as principal of Mills today; Moka would not have a damage because she would still be receiving income from District, and arguably, she would be progressing in her role as principal at this point in the school year.

93. Because Moka was terminated without reason, she was severely damaged; she lost her income as a result of the improper termination.

Jury Demand

94. Moka requests a trial by jury in this matter.

WHEREFORE, Moka prays her termination be reversed; Moka further prays that she be awarded damages, including attorney's fees and punitive damages for the acts committed against her. Moka further requests all further relief this Court finds to be just and proper.

Respectfully submitted,

**TERESA MOKA**

By: /s/ Jay Paul Coleman

Jay Paul Coleman, AR. Bar #: 2020104
The Law Offices of J. Paul Coleman
1501 N. University Ave., Suite 416
Little Rock, AR. 72207
Ph: 501-626-8028
Fax: 501-441-2297
Email: jay@jpaulcolemanlaw.com

PLAINTIFF'S
EXHIBIT

 **PULASKI COUNTY SPECIAL SCHOOL DISTRICT**
925 East Dixon Road, Little Rock, AR 72206 • 501-234-2000 • Website: pcssd.org

January 26, 2024

<u>HAND DELIVERED</u>

Ms. Teresa R. Moka
24 Bayonne Court
Little Rock, Arkansas 72223

Dear Ms. Moka:

Please accept this letter as official notification that you are suspended with pay effective immediately and that I will recommend to the Pulaski County Special School Board ("Board") that your employment contract with the Pulaski County Special School ("District") be terminated. The reasons for this recommendation are *"conduct unbecoming a professional employee", "insubordination", "failure to follow reasonable directives" and "other just and reasonable cause"* as more particularly set forth as follows:

1. You failed to follow protocol and the chain of command as set forth below:
   - You entered into a $300,000 contract with ICLE (Model Schools) without notifying your supervisor or obtaining board approval.
   - You made an unauthorized voice callout and emailed parents stating that Mills University Studies High School was closed to new students.
   - You failed to notify Human Resources of the departure of a teacher for two weeks.

2. You failed to complete instructional directives as set forth below:
   - You failed to develop a system for recording data.
   - You failed to develop plans for Classroom Walkthroughs (minimum of 10 per week).
   - You failed to develop a plan for AVID implementation with Focused Note-taking.
   - You failed to develop a plan for implementing the gradual release model, allowing for bell-to-bell instruction.
   - You failed to develop a plan for actionable feedback to staff.
   - You failed to develop a plan for credit recovery at your school, with a particular focus on seniors.
   - You failed to develop a plan for building the capacity of your assistant principals.
   - You failed to address teachers in your building not working.
   - You failed to ensure substitutes are correctly prepared to instruct students.
   - You failed to correct your chronic tardiness and/or absences to mandatory administrative meetings.

3. You failed to complete local, state, and federal requirements on time or in a timely manner as set forth below:
   - You failed complete the Federal programs budget by October 6, 2023.
   - You failed to submit the State Health and Wellness priority requirement by October 1, 2023.
   - You failed to ensure the DLM assessment is on target.
   - You failed to answer the final course submission for Pre-AP in a timely manner.
   - You failed to regularly complete AVID instructional walks and CCI processes.
   - You failed to schedule or conduct Title I Parent Meeting.

Ms. Teresa R. Moka
January 26, 2024
Page 2 _____

4. You failed to create a safe & orderly environment as set forth below:
   - You failed to develop systems that address the school safety and expectations (students skipping class, students out of designated area and/or students leaving campus).
   - You failed to resolve excessive student tardies and students bringing food on the campus.
   - You failed to resolve security hot spots because of lack of duty teachers and/or parking protocol which led to a wreck between a student and a sheriff's vehicle.
   - You failed to prepare and implement the use of ID Badges in a timely manner or consistently.
   - You failed to ensure athletic events had administration present.
   - You failed to implement a medical lockdown when a medical situation necessitated an ambulance creating a chaotic atmosphere with students changing classes and congregating in the halls, potentially inhibiting the medical personnel from treating the student.
   - You failed to monitor classes which allows opportunities for students to hide, and teachers as well as students, to engage in inappropriate behavior (teacher tattooing students during class).

5. You failed to create a climate of high expectations for students as set forth below:
   - You failed to resolve students walking around with blankets.
   - You failed to resolve students sleeping during class and sitting inappropriately on furniture.
   - You failed to resolve teachers using phones and not engaging with students.
   - You failed to resolve students use of the front restrooms that are for adults and special circumstances.
   - You failed to resolve students lack of engagement in class, i.e. phones out with movies and games and/or YouTube on Chromebooks.

**The hearing on the termination recommendation will take place at the next regularly scheduled meeting of the Board, on February 13, 2024, beginning at 6:00 p.m., in the Boardroom at the District Office, 925 E. Dixon Road, Little Rock, Arkansas 72206. You have a right to attend the hearing to provide a defense against the termination recommendation.**

The hearing before the Board will be open to the public. If you chose not the attend the hearing or if you choose not to provide a defense at the hearing, I will present the reason for the recommended termination to the Board in executive session.

Please advise me in advance if you plan to attend your hearing and whether you plan to have counsel present.

Sincerely,

Dr. Charles McNulty
Superintendent of Schools

c:    Sonya Whitfield
      Connie Laster
      Personnel File

Ms. Teresa R. Moka
January 26, 2024
Page 3 _____

By my signature below, this will confirm that I have been offered the opportunity under Act 869 of 2003 to have a witness of my choice present during the discussion of this matter and that this letter.   Your signature does not indicate your agreement with the contents of this notice, but signifies that the notice has been personally delivered to you.

*Teresa R. Moka*

_____        _____
Employee Signature                              Witness Signature

*1- 26-2024*

_____        _____
Date                                                      Date

*My signature does not mean I agree with the contents of this letter only that I have ~~been~~ ~~made an~~ received a copy.*

PLAINTIFF'S
EXHIBIT

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Little Rock Area Office
820 Louisiana St, Suite 200
Little Rock, AR 72201
(501) 900-6130
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/21/2025

To: Mrs. Teresa R. Moka
24 Bayonne Court
Little Rock, AR 72223

Re: EEOC Charge No: 493-2024-01292

EEOC Representative and email:     Joslyn Burchett
Investigator
joslyn.burchett@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 493-2024-01292.

On behalf of the Commission,

Digitally Signed By: William A Cash
05/21/2025
William A Cash
Area Office Director

**CC: PULASKI COUNTY SPECIAL SCHOOL DISTRICT**

Bequette, Billingsley & Kees P.A.
Attn: Jay Bequette
425 W Capitol Ave Ste 3200
Little Rock, AR 72201

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 493-2024-01292 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Delner Franklin-Thomas, 200 Jefferson Ave Suite 1400, Memphis, TN 38103.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 493-2024-01292 to the District Director at Delner Franklin-Thomas, 200 Jefferson Ave Suite 1400, Memphis, TN 38103.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https: /www.eeoc.gov/foia/section-83-disclosure-information-charge-files.